FILED

SEP 2 2 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM SIZER, SAMUEL
MCCORMICK and SHAWNA DAVIS,

       Plaintiffs,

                              CV10-553-PK

                              FINDINGS AND
v.                           RECOMMENDATION

NEW ENGLAND FINANCIAL, a service
mark/agent of NEW ENGLAND LIFE
INSURANCE COMPANY, a corporation,
METROPOLITAN LIFE INSURANCE CO.,
a Delaware corporation, MICHELLE
WARNES, an individual, and MARCUS
JOHNSON, an individual,

       Defendants.

_____

PAPAK, Judge:

       Plaintiffs William Sizer, Shawna Davis, and Samuel McCormick filed this action in state

court arising out of their recruitment to work for defendant New England Life Insurance

Page 1 - FINDINGS AND RECOMMENDATION

Company as insurance agents. Now before the court is defendants' New England Life Insurance Company ("New England"), Metropolitan Life Insurance Co. ("MetLife") and Michelle Warnes' motion (#5) to dismiss defendant Marcus Johnson as fraudulently joined. For the reasons described below the motion should be granted.

## BACKGROUND

In April, 2008, plaintiffs filed this action in Multnomah County Circuit Court. (Complaint, #8 at Ex. A). Plaintiffs allege in their complaint that in July, 2008, Sizer[1] was approached by defendant Michelle Warnes, who identified herself as a managing partner for defendant New England Financial.[2] *Id.* at ¶8. Warnes allegedly proposed that if Sizer joined New England's offices, he would receive a one-time payment of $35,000 as well as other benefits, including free office space, office equipment, phone service, and assistance from New England's transition team for up to 160 days. *Id.* ¶¶9-10. In return for those benefits, Sizer would be required to change broker dealers. *Id.* at ¶10.

In August, 2008, plaintiffs allege that Sizer and Davis met with Warnes two more times about the possibility of joining New England. *Id.* at ¶¶13-16. In September, 2008, Warnes improved her offer to Sizer by increasing the cash payment from $35,000 to $50,000, offering Sizer and his wife increased life insurance, and describing how Sizer, Davis, and their clients

---

[1]Plaintiff Sizer is plaintiff Davis' father, and before joining New England the two worked together under an arrangement where Davis received a percentage of Sizer's gross dealer concessions as compensation. (Complaint, #8 at Ex. A, ¶14).

[2]New England Financial is not a separate entity, but rather a registered trade name under which New England Life Insurance Company conducts business. (Corp. Disclosure, #3). Defendant Metropolitan Life Insurance Co. ("MetLife") is the parent company of New England Life Insurance Company. *Id.*

Page 2 - FINDINGS AND RECOMMENDATION

would receive special treatment.[3]  *Id.* at ¶17.

Sizer allegedly met with Warnes several more times and ultimately accepted an appointment as an agent with New England in December, 2008.  *Id.* at ¶¶18-20.  An agreement between Sizer, Davis and New England included a number of material terms described exhaustively in plaintiffs' complaint.  *Id.* at ¶22.

In January, 2009, Sizer and Davis moved into New England's office.  Instead of finding a transition team to assist them as promised,  plaintiffs allege that only Warnes and Marcus Johnson were available to help.  *Id.* at ¶23.  Johnson volunteered to help Sizer transfer his several thousand clients to a new broker dealer and began writing letters to Sizer's clients asking them to sign a form transferring their accounts to New England.  *Id.* at ¶24.  Johnson also made copies of all documents incoming to Sizer.  *Id.* at ¶27.  In some cases, Johnson used copies of Sizer's transfer forms to transfer Sizer's clients to New England without Sizer's authorization.  *Id.*

Plaintiffs allege that many of the other benefits that New England promised Sizer and Davis failed to materialize.  For example, Sizer never received selling agreements with US Energy, Sizer's wife never received the increased life insurance coverage, life insurance coverage for Sizer and Davis was of a different type than originally promised, Davis received a commission of 46% instead of 60% as promised, phone answering service in the office was erratic, mail delivery was late, and Warnes refused to pay for postage and failed to arrange direct deposit for Sizer and Davis.  *Id.* at ¶¶ 30-38, 60, 63.  In May, 2009, Sizer and Davis left New England and rejoined another firm.  *Id.* at ¶¶41-42.

---

[3]Special treatment included faster processing of their applications and exclusive access to an expert underwriting processor.  (Complaint, #8 at Ex. A, ¶17).

Warnes also allegedly recruited plaintiff McCormick to join New England in June, 2008,
promising certain compensation and benefits which were not produced. *Id.* at ¶¶43-55. In late
2008, McCormick learned that he would not receive the promotion promised to him when he was
recruited. *Id.* at ¶52. McCormick inquired about a new position at MetLife. *Id.* at ¶54. Soon
thereafter, McCormick was terminated from New England. *Id.* at ¶55. Warnes then allegedly
intervened with MetLife and prevented McCormick from being hired. *Id.* at ¶¶56-58.

Plaintiffs' complaint asserts five claims for relief, although only Sizer and Davis' second
claim for relief for fraud and misrepresentation is relevant to the motion now before the court.
On May 14, 2010, defendants New England, MetLife, and Warnes removed this case to the
District of Oregon. In their notice of removal (#1) defendants asserted that this court had
diversity jurisdiction under 28 U.S.C. § 1332 and that the action was removable. Defendants
contended that all three plaintiffs are citizens of Oregon, that New England is a citizen of
Massachusetts, MetLife is a citizen of New York, and Warnes is a citizen of Washington.
Defendants also asserted that the other two defendants did not destroy diversity; New England
Financial was not a separate legal entity and Johnson, although apparently an Oregon resident,
was not served.[4]

The same day that defendants removed, defendants also filed the motion now before the
court asserting that defendant Marcus Johnson was fraudulently joined in order to defeat this
court's diversity jurisdiction and that plaintiffs failed to state a claim regarding Johnson. Thus,
defendants request the court to dismiss any claims against Johnson and permit the case to

---

[4] Subsequently, in July, 2010, counsel for defendants accepted service for defendants
Johnson and Warnes. (Acknowledgment of Service, #20).

Page 4 - FINDINGS AND RECOMMENDATION

proceed in federal court.

## LEGAL STANDARDS

### I.    Fraudulent Joinder

The Ninth Circuit describes fraudulent joinder as a term of art. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McGabe*, 811 F.2d at 1339). If the joinder of a defendant is fraudulent, the district court may ignore the presence of that defendant for the purpose of establishing diversity. *Id.*

In ruling on Fed. Rule Civ. P. 12(b)(6) motions, the court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, courts can look further when addressing fraudulent joinder. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318–319 (9th Cir. 1998). "The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *Id.*

### II.    Motion to Dismiss

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, "a court may generally consider only allegations contained in the pleadings, exhibits

attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Finally, if the court dismisses for failure to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by alleging other facts. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

To survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

## DISCUSSION

Although defendants style their pleading as a single motion to dismiss Johnson as a fraudulently joined defendant, in reality their pleading addresses two analytically separate issues. In essence, defendants first ask the court to establish subject matter jurisdiction despite Johnson's presence as a non-diverse party because Johnson was fraudulently joined. Second, defendants move to dismiss all claims against Johnson.

## I.    Fraudulent Joinder

Ninth Circuit analysis consistently treats fraudulent joinder as a jurisdictional question.

*See McCabe*, 811 F.2d at 1339 (holding that because plaintiff failed to state a cause of action against defendants, they were fraudulently joined and "their presence did not destroy diversity."). Thus, establishing fraudulent joinder merely permits a court to ignore a non-diverse defendant's presence in the lawsuit for the narrow purposes of determining diversity. *Morris v. Princess Cruises*, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). After a court determines that it has removal jurisdiction despite a fraudulently joined defendant, it may then address whether the defendant should be dismissed. *Cf. Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1419–1420 (9th Cir. 1989) (affirming district court's order denying plaintiffs' application for remand because non-diverse defendants were "shams" and then dismissing plaintiffs' complaint because the joinder of defendant was "not justified on the face of the pleadings.")

Moreover, district courts typically apply the doctrine of fraudulent joinder when a party moves for remand challenging the federal court's removal jurisdiction. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1066-68 (9th Cir. 2001) (where plaintiff moved to remand contending lack of diversity jurisdiction, district court properly denied motion on the basis that non-diverse defendant was fraudulently joined because it was obvious that plaintiff could not possibly prevail on her claim against that defendant); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1338-39 (9th Cir. 1987) (district court denial of plaintiff's motion to remand not error because plaintiff's complaint stated no cause of action against two non-diverse defendants and thus their joinder was fraudulent).

However, even when no party has moved for remand, the court has an independent obligation to examine whether removal jurisdiction exists before deciding any issue on the merits. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004); *accord Univ. of S.*

Page 7 - FINDINGS AND RECOMMENDATION

*Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (error for district court to rule on

plaintiff's right to dismiss removed case before determining existence of removal jurisdiction).

This approach is consistent with the general requirement that subject matter jurisdiction will not

be assumed for the purpose of deciding a case on the merits, even where the merits question is

more easily resolved and the prevailing party on the merits would be the same as the prevailing

party were jurisdiction denied. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998).

Here, although plaintiffs contend in briefing and oral argument that the case should be

returned to state court, they have not yet moved for remand. Even without such a formal motion,

I necessarily address the jurisdictional question of fraudulent joinder and find that co-defendant

Johnson was indeed fraudulently joined.[5] Again, the central question in this analysis is whether

the plaintiffs fail to state a cause of action against a resident defendant under state law. *McGabe*,

811 F.2d at 1339.

The parties agree that the plaintiffs' second claim for relief, where Sizer and Davis allege

"Misrepresentation/Fraud," is the only claim relevant to co-defendant Johnson. In that claim,

plaintiffs' generally allege the elements of fraud against all defendants collectively, including that

"Defendants and each of them, made material representations related to the terms and conditions"

of the contract between Sizer and Davis, and defendants. (Complaint, #1, ¶¶68-74). Plaintiffs'

factual allegations, however, are insufficient to plead a claim for fraud against Johnson.

Under Oregon law, plaintiffs must allege the following elements to state a claim against

---

[5]Defendants suggest that they have standing to raise the fraudulent joinder issue despite plaintiffs' lack of motion to remand because their motion to dismiss is a "preemptive opposition" to plaintiffs' attempt to remand. *See Shepard v. Allstate Ins. Co.*, 2006 U.S. Dist. LEXIS 562, *9-10 (S.D. Ohio 2006).

Johnson for fraud: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976); *Johnsen v. Mel-Ken Motors*, 134 Or. App, 81, 89, 894 P.2d 540 (1995).

Here, plaintiffs do not allege any facts on the face of the complaint indicating Johnson committed fraud.[6]  The complaint includes several innocuous general references to Johnson, indicating that he lives in Oregon, worked for New England, was available to help Sizer and Davis with their transition to New England's office, and would often review the outgoing mail from Sizer.  (Complaint, #1, ¶¶ 3,23,34).  The complaint's more specific allegations concerning Johnson all involve his role in assisting Sizer and Davis transfer their clients to New England's broker-dealer:

> Warnes and Johnson told Davis and Sizer that they would send out broker dealer change forms to Sizer's and Davis' substantial list of clients, and then donwloaded Sizer's entire data base into the New England Financial computer.  Despite the promises, neither Warnes nor Johnson consistently or efficiently tracked the change letters.
>
> . . .
>
> Johnson volunteered to help; taking Sizer's database and downloading it to Johnson's computer. Thereafter Johnson began writing letters to Sizer's clients, requesting them to

---

[6] Defendants argue that a declaration submitted with their motion describing Johnson's job duties indicates Johnson was engaged in ministerial duties and thus was not personally liable for any conduct of Warnes, his manager.  Although such declarations are properly before the court considering a motion on fraudulent joinder, there is no need to examine them here, since the complaint alone demonstrates that plaintiffs state no cause of action against Johnson. *See McCabe*, 811 F.2d at 1339 ("On the basis of the complaint alone, the district court could rightly conclude that no cause of action had been stated against [defendants].").

sign a broker-dealer change form to transfer to New England Financial.

. . .

When Sizer received the transfer forms from Sizer's clients, he reviewed the forms and forwarded them to Johnson. There were many forms that did not go to Johnson because Sizer still had a contract with Midland National Life for those clients, and was still being paid from Midland National Life.

. . .

Johnson made copies of everything before Sizer received it. Johnson used the copies to transfer all of Sizer's clients without Sizer's authorization, even the clients that were not [supposed] to be transferred.

*Id.* at ¶¶22(r), 24, 26, 27.

According to the complaint, Johnson only made one representation that could form the basis for a claim for fraud. Johnson stated that he and Warnes "would send out broker dealer change forms" to Sizer and Davis' list of clients. *Id.* at ¶22(r). Yet the complaint also acknowledges that Johnson actually mailed those documents: "Johnson began writing letters to Sizer's clients, requesting them to sign a broker-dealer change form . . . ." *Id.* at ¶24. Although the complaint suggests that Johnson failed to "consistently or efficiently tracked the change letters" after they were mailed, it never alleges any facts indicating that Johnson's representation was false, a required element of fraud. Additionally, the complaint fails to allege facts indicating that Johnson knew that his promise to send out change forms was false or that Johnson was ignorance of its truth, another required element. To the contrary, the complaint asserts that Johnson intended to send and actually sent those forms. Consequently, because Davis and Sizer's allegations do not state a claim for fraud against Johnson, he was fraudulently joined.

Since Johnson was fraudulently joined, I must accordingly ignore Johnson's non-diverse

citizenship in the lawsuit in order to determine diversity.  Aside from Johnson, who is

fraudulently joined, all properly joined plaintiffs are diverse in citizenship from all defendants

and the amount in controversy exceeds $75,000 for each plaintiff.  Thus, this Court has original

jurisdiction under 28 U.S.C. §1332.  Consequently, this court also has removal jurisdiction under

28 U.S.C. § 1441(a).

## II.    Motion to Dismiss

I next turn to whether plaintiffs' second claim for relief against Johnson should be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[7]  Because the second claim

alleges fraud and misrepresentation, I also must consider the requirements of Federal Rule of

Civil Procedure 9(b) that a fraud complaint must be plead with particularity.  Fed. R. Civ. P. 9(b)

("In alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake.")  The Ninth Circuit has clarified that a fraud complaint requires "more

specificity including an account of the 'time, place, and specific content of the false

representations as well as the identities of the parties to the misrepresentations.'"  *Swartz v.*

*KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d

1058, 1066 (9th Cir. 2004)).  Further, "Rule 9(b)  does not allow a complaint to merely lump

multiple defendants together" but requires allegations that differentiate between defendants and

allege separately each defendant's participation in the fraud.  *Id.* at 674-75.

Given the analysis above finding that plaintiffs' complaint failed to state a cause of action

---

[7] Plaintiffs concede both in briefing and oral argument that their second claim for relief is
the only claim in their complaint relevant to Johnson.  Thus, to the extent that any other claims
for relief in the complaint purport to state a claim against Johnson, those counts should also be
dismissed as to Johnson.

for fraud under Oregon law against Johnson, there is no doubt that plaintiffs' complaint is

similarly deficient under the more stringent federal pleading requirements.  Therefore,  plaintiffs'

second claim for relief should be dismissed as to co-defendant Johnson, without prejudice, since

pleading additional facts concerning Johnson's role in the alleged fraud could potentially cure the

complaint's defect.[8]  *See Vess v. Ciba- Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003)

(dismissals under Rule 9(b) are functionally equivalent to dismissals under Rule 12(b)(6) and

should be without prejudice if defects are curable).

## CONCLUSION

For the foregoing reasons, defendants New England Life Insurance Company,

Metropolitan Life Insurance Co., and Michelle Warnes' motion to dismiss (#5) regarding claims

against co-defendant Marcus Johnson should be granted and plaintiffs' claims against Johnson

should be dismissed without prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

///

///

---

[8]Plaintiffs' counsel at oral arguments suggested that he could allege additional facts concerning Johnson's participation in the fraud, but did not do so because he believed the current complaint was sufficient.

Page 12 - FINDINGS AND RECOMMENDATION

///

   If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

   IT IS SO ORDERED.


Dated this 22nd day of September, 2010.

Honorable Paul Papak
United States Magistrate Judge


Page 13 - FINDINGS AND RECOMMENDATION