IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMUEL MCCORMICK,

     Plaintiff,

                             3:10-cv-00553-PK

                             OPINION AND ORDER

v.

NEW ENGLAND LIFE INSURANCE
COMPANY, a corporation,
METROPOLITAN LIFE INSURANCE CO.,
a Delaware corporation, and MICHELLE
WARNES, an individual,

     Defendants.

PAPAK, Judge:

    Plaintiff Samuel McCormick[1] filed this action in state court against New England Life

Insurance Company ("New England"), Metropolitan Life Insurance Co. ("Metlife"), New

England's parent company, and Michelle Warnes, managing partner of New England's local

branch office, arising out of his recruitment to become an independent contractor insurance agent

with New England.  McCormick alleged claims for breach of contract and fraud relating to

---

    [1]McCormick is the last remaining plaintiff in this action, as the other original plaintiffs
have settled their claims.

defendants' alleged failure to promote him as promised to a Specialist position and for
intentional interference with economic relations relating to Warnes' role in preventing him from
being rehired at MetLife. This court previously granted defendants' motion for summary
judgment on the intentional interference claim, granted defendants' motion in limine finding that
McCormick's employment relationship with New England was at-will, and consequently
restricted his potential breach of contract damages to $2,250, consisting of the additional salary
McCormick would have received as Specialist from January 2009 until his termination on
February 14, 2009. (#71.) Now before the court is defendants' motion in limine concerning
damages on McCormick's fraud claim. (#82.) For the reasons described below, defendants'
motion is granted.

### DISCUSSION

Defendants move for an in limine ruling on two issues. First, they ask the court to find
that because McCormick's employment relationship with New England was terminable at-will,
he cannot receive benefit-of-the-bargain damages on his fraud claim (the extra salary and bonus
he would have received had he been promoted to Specialist) for any period after his termination.
In other words, defendants request the court extend its earlier in limine ruling concerning
damages on McCormick's breach of contract claim to his fraud claim as well. Second, in the
alternative, defendants seek a ruling that McCormick's claimed benefit-of-the-bargain damages
for a lost $80,000 bonus are too speculative to be recovered. The combination of this court's
prior ruling concerning the at-will nature of McCormick's employment and clear-cut Oregon
case law about the limits of benefit-of-the-bargain damages for fraud claims dictate that the first
aspect of defendants' in limine motion be granted. Because the court finds in favor of

defendants on the first point, it need not address the second.

I briefly review this court's earlier ruling and its impact on the present motion. Previously, defendants moved for an in limine ruling that, even assuming defendants failed to promote McCormick to the Specialist position as promised, McCormick's employment relationship with New England was strictly at-will and therefore his potential breach of contract damages are limited to the Specialist salary he would have received up to the date of his termination as a New England agent, but not beyond, amounting to $2,250. In granting that motion, this court reached several important conclusions. First, this court found that Warnes alleged statement to McCormick that the Specialist position would be reviewed annually if awarded at most created a contingent right to yearly reviews if McCormick remained employed, not employment for a fixed period terminable only for cause. Second, and independently, this court decided that even if Warnes had unambiguously promised McCormick the Specialist position for a fixed term, she nevertheless lacked the actual or apparent authority to bind defendant New England with that promise. As defendants correctly note, neither of these conclusions are necessarily limited to the context of McCormick's breach of contract claim. Both define the nature of McCormick's employment as at-will, and were preliminary to the court's determination that McCormick's damages for breach of contract were limited.

McCormick contends in briefing that these conclusions were clearly erroneous and asks the court to make a finding inconsistent with them on the present motion in limine.[2] In effect,

---

[2]At oral argument, McCormick took a different tact arguing that the court could find in his favor on this motion without disturbing its prior ruling. He contended that the court must now consider the context of McCormick's decision to accept employment in analyzing the extent of available fraud damages. This context included various misrepresentations by Warnes concerning the nature and benefits of the Specialist position. Such contextual facts, McCormick

McCormick seeks reconsideration of the parts of this court's earlier order that pertain to the at-will nature of McCormick's employment, without challenging the court's ultimate conclusion.

A motion in limine is a pre-trial interlocutory order that the court may reconsider at any time before final judgment. *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."); *Cotton ex rel. McClure v. City of Eureka*, No. C 08–04386 SBA, 2011 WL 4047490, at *1 (N.D. Cal. Sept. 8, 2011) (reconsidering motion in limine under court's power to modify pre-trial rulings at any time prior to final judgment). A court may "reconsider previously decided questions" in several circumstances, including when "the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995).

Here, however, McCormick presents no compelling explanation why this court's previous ruling was clearly erroneous. McCormick's primary argument posits that because defendants and McCormick entered into a unilateral contract to grant him the Specialist position for at least one year if he won agent of the year in 2008, and because McCormick became the top agent, the Specialist position and thus his entire employment ceased to be terminable at-will.[3] In support of

---

insists, were not considered in the court's prior ruling on contract damages, and raise the possibility that jury could still find McCormick's Specialist position was terminable for cause, at least for the purposes of his fraud claim. McCormick offers no legal authority supporting this position and I reject the notion that McCormick could be deemed an at-will employee for the purposes of one cause of action but not for another.

[3] McCormick made a similar but much less detailed argument in his briefing on the prior motion in limine, distinguishing cases cited by defendants on the basis that "none involved the promise of continued employment in return for an additional performance condition which had

that argument, McCormick relies heavily on a lengthy dissent in *Slate v. Saxon, Marquoit, Bertoni & Todd.*   166 Or. App. 1, 8, 999 P.2d 1152, 1156-1159, *rev. den.*, 330 Or. 375, 6 P.3d 1105 (2000).

In *Slate*, the plaintiff, a law school graduate, took and passed the Oregon Bar Examination instead of another state's bar exam, relying on a law firm's representation that if he did so and the firm retained its government contracts, it would hire plaintiff as an attorney. Before plaintiff started work, the law firm reneged.  Plaintiff brought a breach of contact claim and the trial court granted summary judgment on that claim and plaintiff's alternative promissory estoppel theory.  In affirming the trial court, the majority held that neither breach of contract nor promissory estoppel claims lie when an employer withdraws an offer of at-will employment before the employee commences work.  *Id.* at 1154.   The majority explained that it would be both illogical and poor public policy for an employer to be liable for terminating an at-will employee before the employee begins working, but not liable for terminating that same employee immediately after he starts work.  *Id.*   The dissent, by contrast, posited that " a prospective employee who, in fulfillment of a unilateral contract offer, reasonably relies on an employer's separate promise to hire the employee is not barred from seeking relief simply because the ultimate employment would be at-will."  166 Or. App. 1, 8, 999 P.2d 1152, 1156-1159, *rev. den.,* 330 Or. 375, 6 P.3d 1105 (2000) (Wollheim, J., dissenting).  The facts of *Slate* are nearly on-point, or at the very least analogous to the present case, where McCormick arguably relied on a promise from his employer that a position would be forthcoming and took some actions in reliance on that promise, after which the employer failed to deliver on the alleged promise.

---

been successfully completed by the employee . . . ."  (P.'s Memo in Opp., #62, at 9.)

Obviously, the reasoning of a dissent in an analogous case like *Slate* is hardly the type of

persuasive justification that must be offered to support reconsideration of this court's earlier

ruling. No courts have cited the *Slate* dissent with approval. The majority opinion is well-

reasoned, even if it adopts a stance that differs from a significant number of other state courts.

*See Slate,* 166 Or. App. at 5 (noting that state courts addressing "the actionability of an

employer's termination of an at will employment agreement before the employee has begun his or

her performance of the job" have come down on both sides of the issue in "relatively equivalent

numbers"). And the Oregon Supreme Court denied review. Admittedly, a pending appeal of the

Court of Appeals' decision in *Cocchiara v. Lithia Motors, Inc.*, 247 Or. App. 545, 270 P.3d 350

(2011) argues that the Supreme Court should overrule *Slate*. *See infra,* at n.7. But the Supreme

Court has not yet issued a decision in that case. Thus, the dissenting analysis in *Slate* is not

currently the law in Oregon.

Moreover, even if this court was tempted to follow the dissent, it would still find

McCormick's employment with New England was at-will. Suppose Warnes' offer of the

Specialist position was indeed an offer of a unilateral contract that McCormick accepted through

his efforts to achieve agent of the year status, and that required the promisor (Warnes) to keep

McCormick employed for at least one year. The portion of this court's earlier opinion

determining that Warnes lacked actual or apparent authority to modify McCormick's at-will

status still applies.[4] Thus, New England cannot be bound by Warnes's promise to McCormick,

even if that promise had created a unilateral contract as McCormick proposes.

---

[4] McCormick fails to acknowledge the substance of that ruling, indicating that defendants now only "argue" the point. (P.'s Br., #85, at 12.) Moreover, McCormick does not offer any argument whatsoever that the court's ruling on that issue was clearly erroneous.

OPINION AND ORDER- Page 6

This only resolves the first half of defendants' first argument.  Given that McCormick was an at-will employee as a matter of law and his allegedly promised Specialist position was also at-will, I must now address whether McCormick can recover benefit-of-the-bargain damages on a fraud claim for work he asserts he would have performed in the Specialist position.  I concur with defendants that he cannot.  Although the Oregon Supreme Court has never directly addressed the issue, Oregon Court of Appeals cases unambiguously hold that such a plaintiff cannot recover benefit-of-the-bargain damages for work he would have done if Warnes had actually promoted him to Specialist.[5]

For over a century, Oregon courts have recognized that a plaintiff alleging he was fraudulently induced to enter a contract may elect either of two mutually exclusive remedies:  (1) "affirm the contract, and sue for damages"; or (2) "disaffirm it, and be reinstated in the position in which he was before it was consummated." *Hay v. Pac. Tastee Freez, Inc.*, 276 Or. 569, 578, 555 P.2d 1256 (1976) (quoting *Scott v. Walton*, 32 Or. 460, 52 P. 180 (1898)).  Courts have described these two approaches as the "benefit-of-the-bargain" rule and the "out-of-pocket" rule. *Galego v. Knudsen*, 281 Or. 43, 51, 573 P.2d 313, *modified,* 282 Or. 155, 578 P.2d 769 (1978). More recently courts have recognized another possible formulation of fraud remedies which has been said to either merge the two previous methods or perhaps create a new third measure of damages, derived from the Oregon Supreme Court's decision in *Selman v. Shirley*, 161 Or. 582, 615, 85 P.2d 384 (1939).  That is, "a plaintiff is limited to recovering under the 'out-of-pocket rule unless the actionable misrepresentation was a warranty of value, in which case plaintiff

---

[5] But, as I explain more below, the cases are clear that so-called "rescission damages" are available to restore the plaintiff to the position he would have been in had he never taken the job at all.

could recover under the 'benefit-of-the-bargain' rule." *Galego*, 281 Or. at 51 (citing *Selman*, 161

Or. at 609*9); Papé v. Knoll*, 69 Or. App. 372, 386, 687 P.2d 1087 (1984).   There is no dispute

that Oregon courts favor a flexible approach to fraud remedies, as necessary to compensate the

plaintiff for whatever loss he has suffered. *Dizick v. Umpqua Cmty. Coll.*, 287 Or. 303, 312, 599

P.2d 444, 449 (1979) (en banc) ("[w]hen the alleged fraud does not involve the sale of property,

the proper measure of damages must be flexible to compensate the plaintiff for whatever loss he

has suffered"); *Papé*, 69 Or. App. at 385 (noting that *Selman* approves "a flexible approach to

measuring damages in an action for fraud").

Several Oregon cases discuss the extent of fraud damages in the context of fraudulently

induced employment relationships. *See Elizaga v. Kaiser Found. Hosps., Inc.*, 259 Or. 542, 487

P.2d 870 (1971) (en banc); *Cocchiara v. Lithia Motors, Inc.*, 247 Or. App. 545, 270 P.3d 350

(2011); *Albrant v. Sterling Furniture Co.*, 85 Or. App. 272, 736 P.2d 201(1987).  As explained

below, *Albrant* and *Cocchiara* indicate that where an employer fraudulently induces an employee

into at-will employment, the employee may recover "out-of-pocket" damages but not "benefit-of-

the-bargain" damages.  And *Elizaga* demonstrates that "benefit-of-the-bargain" damages are still

available only if the employment was for a fixed term rather than terminable at will.

In *Albrant*, plaintiff brought breach of contract and fraud claims against an employer who

convinced her to leave her job at Montgomery Ward in Klamath Falls for a different position in

Eugene, initially promising her daytime working hours and certain commission rates, but

eventually making her work evenings with lower commissions. 85 Or. App. at 274.  The trial

court granted summary judgment for defendant on plaintiff's fraud claim.  On appeal, the

employer argued that the only proper measure of damages was plaintiff's lost future earnings,

which could not be measured because her new position was terminable at-will. *Id.* at 276.  While the Court agreed with defendants that plaintiff could not recover benefit-of-the-bargain damages because of the at-will nature of her employment, the Court also found that the plaintiff could recover damages for the out-of-pocket losses she incurred by leaving her previous job and relocating:

> In *Dizick v. Umpqua Community College*, 287 Or. 303, 599 P.2d 444 (1979), the court discussed the proper measure of damages in a fraud action. Rather than formulate a rule of precise application in all cases, the court stressed that, "[w]hen the alleged fraud does not involve the sale of property, the proper measure of damages must be flexible to compensate the plaintiff for whatever loss he has suffered." 287 Or. at 312, 599 P.2d 444. Accordingly, we find untenable defendants' contention that the only proper measure of damages in this case is what plaintiff would have earned under the contract. We refuse to adopt a rule that would leave a victim of fraud uncompensated merely because the misrepresentation involves a contract for employment at will.
>
>    ***
>
> At trial, plaintiff may be able to prove that Montgomery Ward would have continued her employment indefinitely and that she would have continued there for a period of time sufficient to locate other suitable work in the Eugene area had it not been for the alleged misrepresentations by defendants. In other words, although she cannot prove what she would have earned working for defendants, she may be able to prove what she lost by quitting her job in Klamath Falls and moving to Eugene. We conclude that those damages would be recoverable in a fraud action.

*Id.* at 276-277. The Court also rejected defendants' contention that out-of-pocket damages were only available if a plaintiff initially brought suit for rescission of her employment contract, invoking the need for flexibility in the measure of damages for fraud claims. *Id.* at 277 n.3.

*Albrant* thus establishes the important baseline rule that a plaintiff alleging fraudulent inducement into a contract for at-will employment cannot recover benefit-of-the bargain damages, but can recover out-of-pocket damages.

 *Cocchiara* applies that same principle, although it never cites *Albrant*.  *See* 247 Or. App.

OPINION AND ORDER- Page 9

545. The plaintiff in *Cocchiara*, a car salesman, accepted defendants' offer of a less-stressful "corporate" position after suffering a heart attack. *Id.* at 547. Plaintiff turning down a different position at the *Medford Mail Tribune* in reliance on the offer, and defendants later denied plaintiff the "corporate" job. *Id.* Plaintiff asserted claims for fraudulent misrepresentation, promissory estoppel, and disability discrimination. *Id.* at 548. Importantly, plaintiff sought economic damages "related solely to the wages that he claims he would have earned in the corporate job with defendants; he did not claim damages associated with wages that he might have earned at the *Medford Mail Tribune*." *Id.* The Court of Appeals affirmed the trial court's grant of summary judgment. *Id.* at 549. The Court first found no factual dispute that the offered position was at-will. Next, the Court imported the reasoning of *Slate* concerning the limitation of damages on a breach of contract claim, discussed *supra*, to the fraudulent misrepresentation context. *Id.* at 551-552. The Court reasoned that because the corporate position could have been terminated at any time, defendants' fraudulent promise of employment could not have caused any damages in the form of wages plaintiff claims he would have earned in that position, i.e., benefit-of-the-bargain damages. *Id.* at 552. And, since plaintiff did not seek out-of-pocket damages, his fraudulent inducement claim failed. *Id.*

Finally, *Elizaga* demonstrates the corollary to *Albrant* and *Cocchiara* – that where an employer fraudulently induces an employee to accept a position that is not terminable at-will, benefit-of-the-bargain damages are available. There, defendant Kaiser hospital offered a foreign doctor a preceptorship– essentially a position in a fixed-length surgical training program leading to certification with the American Board of Surgery. 259 Or. at 545-546. Five months before offering the preceptorship, Kaiser knew that the state medical board's authorization of the

OPINION AND ORDER- Page 10

preceptorship program would expire the day before plaintiff was to begin. *Id.* After receiving

the offer, plaintiff moved his family from the Philippines to Portland, but was later told that he

could not be hired. *Id.* at 546. Plaintiff brought suit for fraudulent misrepresentation and

received a jury verdict in his favor. *Id.* at 544, 546. Defendant argued that the trial court erred in

instructing the jury that the measure of damages for fraud "would be that amount of money

which would compensate the plaintiff for the actual salary loss he has suffered as a result of the

deceit," since that instruction improperly followed the "benefit-of-the-bargain" rule rather than

the "out-of-pocket" rule. *Id.* at 549. The Court analogized the fraudulent misrepresentation

claim to a breach of employment contract claim, noting that measure of damages for the latter

would be "the difference between what the plaintiff did earn and what he would have earned

under the contract." *Id.* at 550. The Court also cited *Andolsun v. Berlitz Sch. of Languages of*

*Am., Inc.*, 196 A.2d 926, 927 (D.C. Ct. App. 1964), a District of Columbia Court of Appeals

decision that had applied the same measure of damages in an action for fraudulent inducement

into a one-year, fixed-term employment contract.[6] *Id.* Accordingly, the Court concluded that the

trial court properly instructed the jury on the measure of damages. *Id.* Thus, the facts of *Elizaga*

and *Andulsun* limit the scope of *Elizaga*'s holding to instances where plaintiff has an

employment contract for a fixed term.

_____

[6] In *Andolsun*, plaintiff was a foreign national who accepted a one-year contract to provide translation services to U.S. Army and quit his existing job in reliance. Defendant knew plaintiff would be hesitant about taking the position if his alien status would prevent him from retaining the position. At the time it hired plaintiff, defendant had promised the Army to replace all non-citizen translators within a year, but did not disclose that fact to plaintiff. Defendant discharged plaintiff soon after hiring him. The trial court denied recovery on plaintiff's misrepresentation claim, but the Court of Appeals reversed with instructions to enter judgment for plaintiff for loss of earnings he sustained during the period of his one-year contract.

Plaintiff does not even respond to defendants' lengthy discussion of *Albrant, Cocchiara,* and *Elizaga,* effectively conceding that defendants' interpretation of them is accurate. I also discover no other cases suggesting that the Oregon Supreme Court would deviate from *Albrant* and *Cocchiara* if it faced a similar issue. I therefore apply the rule established in those cases in this diversity action.[7]   *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007). I previously concluded that the Specialist position arguably promised to McCormick was terminable at will. Therefore, benefit-of-the-bargain damages are unavailable, but out-of-pocket damages remain available to compensate McCormick for any losses he incurred by quitting his previous position to work at New England in reliance on Warnes' alleged promise. *See Albrant,* 85 Or. App. at 277. Accordingly, I grant defendants' motion for an in limine ruling that: (1) McCormick's potential lost salary damages for his fraud claim are limited to $2,250, based on the Specialist salary from January 1, 2009 through February 14, 2009; and (2) McCormick cannot recover any fraud damages for a bonus he expected to receive but did not actually get before being terminated.

///

///

///

///

///

---

[7] The Oregon Supreme Court denied review in *Albrant, see* 304 Or. 55, 742 P.2d 1186 (1987). Although the Oregon Supreme Court recently granted review in *Cocchiara, see* 352 Or. 107 (2012), plaintiff-petitioner does not challenge the aspect of the Court of Appeals decision finding benefit-of-the-bargain damages unavailable for his fraud claim.

## CONCLUSION

For the reasons stated above, defendants' motion in limine concerning damages on McCormick's fraud claim (#82) is granted, and McCormick's potential fraud damages are limited to $2,250.

IT IS SO ORDERED.

Dated this 12th day of October, 2012.

Honorable Paul Papak
United States Magistrate Judge